IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES SECURITIES
AND EXCHANGE COMMISSION,

        Plaintiff,        Case No.

        v.

FRANK G. MUELLER,

        Defendant.

# COMPLAINT

Plaintiff United States Securities and Exchange Commission ("Commission" or "SEC") alleges the following facts against Defendant Frank G. Mueller ("Mueller"):

## I. SUMMARY OF THE ACTION

1. This SEC action addresses statements in Santa Fe Gold Corporation's ("Santa Fe" or "the company") SEC filings and documents provided to Santa Fe's auditor that were fraudulent or misleading and effectively concealed the misappropriation of hundreds of thousands of dollars by Thomas H. Laws ("Laws"), Santa Fe's former chief executive officer ("CEO").

2. On November 15, 2018, the SEC filed a civil enforcement action against Laws, alleging that he misappropriated investor money. *SEC v. Thomas H. Laws, et al.*, C.A. No. 18-cv-01063-JB-SCY (D.N.M.). The SEC's complaint alleged that Laws received over $1.1 million of investor money to use for various corporate purposes, including for the purchase of a silver mine, the acquisition of mining claims, the purchase of mining equipment, and for third party

services for the company.  Rather than use the funds for corporate purposes, Laws misappropriated most of these funds and attempted to hide his theft by fabricating documents, including bank records.

3. As a result of Laws' misappropriation, the financial statements included in Santa Fe's annual report on Form 10-K for the year ended June 30, 2017, filed with the SEC on July 5, 2018 (the "Annual Report"),[1] and the corresponding management representation letter that Santa Fe provided to its independent auditor, dated July 3, 2018 (the "Management Representation Letter"), were materially false.

4. Mueller, Santa Fe's chief financial officer ("CFO") at the time of Laws' misappropriation was reckless in not knowing that Laws had not used at least $500,000 of Santa Fe's funds for their intended corporate purpose.  For example, Laws provided Mueller with numerous, inconsistent explanations about the location of funds that Laws supposedly used to make a down payment on a silver mine.  Laws' explanation included that the money had been sent to an attorney's trust fund for escrow, an attorney that Mueller later learned had died several years before the alleged transfer of funds.  Mueller also subsequently confirmed with the attorney for the seller of the mine that neither the seller's attorney nor his client had received the funds and that they had no knowledge $500,000 was supposedly being held in an escrow account.

5. Despite that Mueller was reckless in not knowing that Laws had improperly used the Santa Fe investor funds, Mueller signed the Annual Report and the Management

---

[1] Santa Fe's 2017 fiscal year ended on June 30, 2017.  Santa Fe was delinquent with respect to the filing of its 2017 Form 10-K.

Representation Letter, both of which were materially false. As a result, Mueller violated the federal securities laws as described herein.

## II. SUMMARY OF VIOLATIONS

6. As a result of the conduct described herein, Mueller violated, and, unless restrained and enjoined, will continue to violate Section 17(a)(1) and (3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)(1) and (3)] and Sections 10(b) and 13(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78m(b)(5)] and Rules 10b-5, 13a-14, 13b2-1, and 13b2-2 thereunder [17 C.F.R. §§ 240.10b-5, 240.13a-14, 240.13b2-1, and 240.13b2-2]. As a result of the conduct described herein, Mueller also aided and abetted Santa Fe's violation of, and, unless restrained and enjoined, will continue to aid and abet the violation of Sections 13(a) and 13(b)(2) of the Exchange Act [15 U.S.C. §§ 78m(a) and 78m(b)(2)] and Rules 12b-20 and 13a-1 thereunder [17 C.F.R. §§ 240.12b-20 and 240.13a-1].

## III. JURISDICTION AND VENUE

7. The SEC brings this action under authority conferred on it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)] to restrain and enjoin Mueller from engaging in the acts, practices, and courses of business described in this Complaint and acts, practices, and courses of business of similar purport and object. The SEC seeks a permanent injunction and penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. §§ 78u(d)(3)]. The SEC further seeks an order prohibiting Mueller from acting as an officer or director of any public company and prohibiting Mueller from engaging in any offering of a penny stock.

8. This Court has jurisdiction over this action under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. In connection with the transactions, acts, practices, and courses of business described in this Complaint, Mueller, directly and indirectly, made use of the means or instrumentalities of interstate commerce, of the mails, or of the means and instruments of transportation or communication in interstate commerce.

9. Venue lies in this Court under Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act [15 U.S.C. § 78aa(a)] and 28 U.S.C. § 1391(b)(2). Mueller resides in Albuquerque, New Mexico. In addition, many of the acts and practices described in this Complaint occurred in the District of New Mexico and Santa Fe is based in Albuquerque, New Mexico.

## IV. DEFENDANT

10. **Frank G. Mueller**, age 66, is a resident of Albuquerque, New Mexico. Mueller joined Santa Fe as assistant controller in 2010. He served as CFO from May 2014 to July 2020, and was a member of Santa Fe's board of directors from August 2016 to July 2020. He currently serves as Santa Fe's manager of mining operations. As Santa Fe's CFO, Mueller prepared and reviewed Santa Fe's financial statements that the company filed with the Commission, including the financial statements included in the Annual Report.

## V. OTHER RELEVANT PARTIES

11. **Santa Fe Gold Corporation** is a Delaware corporation with its principal place of business in Albuquerque, New Mexico. Santa Fe is a small mining company and has a class of securities registered under Section 12(g) of the Exchange Act. During the period described in this complaint, Santa Fe's common stock, which qualifies as a "penny stock" as defined by

Section 3(a)(51) of the Exchange Act [15 U.S.C. § 78c(a)(51)] and Rule 3a51-1 thereunder [17 C.F.R. § 240.3a51-1], was traded on the OTC Marketplace operated by OTC Markets Group, Inc. or "OTC Pink Sheets," under the ticker symbol "SFEG," and was required to file periodic reports with the Commission under Section 13 of the Exchange Act and related rules thereunder. The company filed Chapter 11 Bankruptcy in August 2015 and exited bankruptcy in June 2016. After exiting bankruptcy, Santa Fe had no assets, two employees (Laws and Mueller), and a single-person audit committee. Santa Fe is delinquent in its reporting obligations under the Exchange Act and, on June 29, 2020, the Commission instituted public administrative proceedings under Section 12(j) of the Exchange Act to determine whether to suspend or revoke the registration of Santa Fe's securities. During the period described in this complaint, Santa Fe engaged in an offering of its securities.

12. **Thomas H. Laws**, age 62, is a resident of Silver City, New Mexico. Laws joined Santa Fe in August 2016, and served as its chief executive officer until September 24, 2018, when he was terminated. Laws also served as a director of Santa Fe from August 2016 until January 9, 2019. On November 15, 2018, the SEC sued Laws alleging violations of, among other provisions, the antifraud provisions of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and obtained a permanent injunction and other relief against him. *SEC v. Thomas H. Laws, et al.*, C.A. No. 18-cv-01063-JB-SCY (D.N.M.).

## VI. FACTS

**A. Laws' Misappropriation of Santa Fe Funds and the SEC's Prior Action**

13. On November 15, 2018, the SEC sued Laws alleging violations of, among other provisions, Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder, and obtained a permanent injunction and other relief against him. *SEC v.*

5

*Thomas H. Laws, et al.*, C.A. No. 18-cv-01063-JB-SCY (D.N.M.).

14. The SEC's complaint alleged that from approximately August 2016 through February 2018, Laws defrauded investors in Santa Fe by misappropriating over $1 million of investor money and making false and misleading statements in SEC filings and other documents.

15. The SEC's complaint alleged that Mueller caused Santa Fe to advance or transfer approximately $1.1 million directly to a bank account solely under Laws' control and unaffiliated with Santa Fe purportedly for corporate purposes, including for the purchase of a mine, mining equipment, and third party services to the company.

16. The SEC's complaint further alleged that rather than use the funds for corporate purposes, Laws misappropriated these funds and attempted to hide his theft by fabricating documents.

**B.     Mueller Recklessly Facilitated Laws' Scheme**

17. The largest single transfer that Mueller made to Laws' bank account was $550,000 on April 5, 2017. This amount was clearly material to Santa Fe as it constituted almost half of the company's assets as of June 30, 2017. At the time Mueller directed the transfer at the request of Laws, Laws, on behalf of Santa Fe, was negotiating for the $3 million purchase of a silver mine near Silver City, New Mexico (the "Alhambra" mine).

18. Laws told Mueller that the seller required that Santa Fe deposit $500,000 in an escrow account controlled by the seller's attorney in order to continue the negotiations, and that the funds would serve as a down payment to be applied towards the $3 million purchase price. In reality, the seller never had asked Laws for a down payment and Laws never placed the money in escrow. Instead, Laws later admitted misappropriating the $500,000 for his personal use.

19. After Mueller caused Santa Fe to transfer the funds to Laws' bank account and continuing through July 3, 2018, Mueller became aware of information that indicated that Laws did not place the $500,000 down payment in escrow.

20. On August 18, 2017, Santa Fe entered into a contract to purchase the Alhambra mine. The contract, which contains an integration clause, set forth a payment schedule for Santa Fe to pay the aggregate purchase price of $3 million. Under that schedule, the final payment, in the amount of $500,000, was due in November 2017. Mueller reviewed the contract and understood that it did not contain any reference to $500,000 placed in escrow with the seller's attorney. The contract also identified the seller's attorney by name, address, and phone number (the "Seller's Attorney").

21. Despite the absence of this information, Mueller did not request, and Laws did not provide, any written documentation or agreement regarding the escrowed funds, or regarding the terms and conditions under which the funds would be disbursed or applied to the purchase price.

22. On or about May 24, 2018, Mueller spoke with the Seller's Attorney. The Seller's Attorney told Mueller that he had no knowledge about any $500,000 down payment being held in an escrow account. The Seller's Attorney had also told Mueller that he had no funds in connection with any $500,000 down payment and that the seller had not received the final $500,000 due under the purchase agreement.

23. Laws told Mueller that the $500,000 down payment had not been deposited with the Seller's Attorney, but instead with another attorney located in Silver City, New Mexico (the "Silver City Attorney"). Laws also informed Mueller that the Silver City Attorney had died after Laws supposedly deposited the down payment money into escrow in April 2017, and that the money was now with a court-appointed "Special Master."

24. On June 6, 2018, Santa Fe's independent auditor, who at that time was conducting the audit of Santa Fe's 2017 financial statements, emailed the purported Special Master to verify the escrow account. The purported Special Master responded that he was "not involved in the matter." The auditor forwarded this email to Mueller on June 7, 2018.

25. Further, Mueller spoke to the seller of the Alhambra mine on at least four separate occasions between May 25, 2018, and June 29, 2018. During one of those conversations, the seller told Mueller that the Silver City Attorney had not recently died, but instead had died several years earlier.

26. On or about June 19, 2018, Laws claimed, falsely, that the Special Master had returned the $500,000 to Laws' bank account, and provided to Mueller a copy of a statement from his bank account. The bank statement, which was heavily redacted and incomplete, purportedly showed a "pending" deposit into Laws' bank account as of June 14, 2018. The bank statement, a forgery created by Laws, contained unusual discrepancies and inconsistencies. For example, the deposit was listed as "pending" in one portion of the bank statement, but as a "posted" transaction (*i.e.,* available for immediate withdrawal) in another portion.

27. On July 3, 2018, over two weeks after the $500,000 was supposedly deposited into Laws' bank account, Mueller inquired of Laws whether the deposit was still "pending." In response, Laws told Mueller, falsely, that the bank had placed some sort of hold on the funds.

C. **Mueller Recklessly Made Material Misrepresentations in Santa Fe's Annual Report filed with the SEC and in Santa Fe's Management Representation Letter**

28. Because of Laws' misappropriation, Santa Fe's Annual Report was materially false as it listed the $500,000 as an asset on the company's balance sheet. The Annual Report also falsely stated: "The Company in April 2017, deposited into escrow $500,000 for good faith towards the purchase" of the Alhambra mine and will "be applied as part of the purchase price

8

due under an agreement."

29. Mueller, as Santa Fe's CFO, signed and certified the Annual Report and represented falsely that it "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of" the company.

30. As a further result of Laws' misappropriation, the Management Representation Letter that Mueller provided to Santa Fe's independent auditor was materially false. The Management Representation Letter stated falsely that, in connection with the Alhambra mine purchase, the company "sent approximately $500,000 to … be held in escrow for the transaction." Mueller, as Santa Fe's CFO, signed the Management Representation Letter.

31. At the time he signed the Annual Report and the Management Representation Letter, Mueller was reckless in not knowing that each of these documents contained false or misleading statements about the $500,000 supposedly held in escrow for the Alhambra mine purchase. In particular, Mueller was aware that the Seller's Attorney had no knowledge of any funds placed in escrow and that the "Special Master" made clear that he was not involved with the matter. Further, Mueller was reckless in not knowing that it would have been impossible for Laws to have deposited the funds with the Silver City Attorney in 2017, as he had died years earlier.

32. The $500,000 purported escrow deposit was material to investors as it totaled over 50% of Santa Fe's current assets as reported on its balance sheet for the year ended June 30, 2017. Further, the statements concerning the Alhambra mine purchase were material to investors because they believed the funds were in escrow to purchase a mine – not misappropriated by Laws.

D. **The Material Misrepresentations Were Made "In Connection" with Santa Fe's Offer and Sale of Securities.**

33. From June 2016 through May 2018, Santa Fe raised approximately $6.8 million through the sale of unregistered stock in order to execute on its business plan to acquire, explore, and develop mining assets, and to create shareholder value. The subscription agreement for the private offering stated that the sales were made under a 2009 prospectus available on EDGAR, the SEC's publicly-available electronic filing system. Under the 2009 prospectus, Santa's Fe's prospective periodic SEC filings, including Santa Fe's Annual Reports, were incorporated by reference into the prospectus.

34. On October 1, 2018, Santa Fe filed a Form 8-K with the SEC disclosing that the company's previously filed financial statements, including those in the Annual Report, could no longer be relied upon.

## VII. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**Fraud in the Offer or Sale of Securities**
**Violations of Securities Act Sections 17(a)(1) and (3) [15 U.S.C. §§ 77q(a)(1) and (3)]**

35. Paragraphs 1 through 34 are re-alleged and incorporated herein by reference.

36. Mueller directly or indirectly, with scienter, in the offer and sale of securities, by use of the means or instruments of transportation or communication in interstate commerce, or of

the mails: (a) employed a device, scheme or artifice to defraud with scienter or (b) engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

37. By reason of the foregoing, Mueller violated, and unless enjoined will continue to violate, Sections 17(a)(1) and (3) of the Securities Act [15 U.S.C. §§ 77q(a)(1) and (3)].

## SECOND CLAIM FOR RELIEF

### Fraud in the Purchase or Sale of Securities
### Violations of Exchange Act Section 10(b) and Rule 10b-5
### [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]

38. Paragraphs 1 through 35 are re-alleged and incorporated herein by reference.

39. Mueller, directly or indirectly, with scienter, by use of the means or instruments of interstate commerce, or of the mails, or of a facility of national securities exchange, in connection with the purchase or sale of a security: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon any person.

40. By reason of the foregoing, Mueller violated, and unless enjoined will continue to violate, Section 10(b) and Rule 10b-5 of the Exchange Act [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF

### False SEC Filings – Aiding and Abetting Santa Fe's
### Violations of Section 13(a) of the Exchange Act and
### Rules 12b-20 and 13a-1 [15 U.S.C. § 78m(a) and
### 17 C.F.R. §§ 240.12b-20 and 240.13a-1]

41. Paragraphs 1 through 34 are hereby realleged and incorporated by reference.

Santa Fe, which was an issuer of securities registered under Section 12 of the Exchange Act, filed a materially false and misleading annual report with the SEC that made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, in violation of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1.

42. By engaging in the conduct described above, Mueller aided and abetted the reporting violations of Santa Fe, in that he recklessly provided substantial assistance to Santa Fe in committing these reporting violations.

43. By reason of the foregoing, Mueller aided and abetted, and unless restrained and enjoined will in the future aid and abet, Santa Fe's violations of Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-1.

### **FOURTH CLAIM FOR RELIEF**

**False Books and Records – Aiding and Abetting Santa Fe's
Violation of Section 13(b)(2) of the Exchange Act [15 U.S.C. § 78m(b)(2)]**

44. Paragraphs 1 through 34 are hereby realleged and incorporated by reference.

45. By engaging in the conduct described above, Santa Fe, in violation of Section 13(b)(2) of the Exchange Act, failed to make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflected the company's transactions and dispositions of its assets and failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles and any other criteria applicable to such statements.

46. By engaging in the conduct described above, Mueller aided and abetted Santa Fe, in that he recklessly provided substantial assistance to Santa Fe, in committing these violations.

47. By reason of the foregoing, Mueller aided and abetted, and unless restrained and enjoined will in the future aid and abet Santa Fe's violations of Section 13(b)(2).

## FIFTH CLAIM FOR RELIEF

**Falsified Books, Records, or Accounts –
Section 13(b)(5) of the Exchange Act and
Rule 13b2-1 [15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1]**

48. Paragraphs 1 through 34 are hereby realleged and incorporated by reference.

49. By engaging in the conduct described above, Mueller knowingly circumvented or knowingly failed to implement a system of internal accounting controls to assure that Santa Fe's financial statements were prepared in conformity with generally accepted accounting principles ("GAAP") and knowingly falsified or caused to be falsified books, records, or accounts of Santa Fe.

50. By reason of the foregoing, Mueller violated and unless restrained and enjoined will in the future violate Section 13(b)(5) of the Exchange Act and Rule 13b2-1.

## SIXTH CLAIM FOR RELIEF

**Deceit of Auditors – Rule 13b2-2 of the Exchange Act
[17 C.F.R. § 240.13b2-2]**

51. Paragraphs 1 through 34 are hereby realleged and incorporated by reference.

52. By engaging in the conduct described above, Mueller made or caused to be made materially false or misleading statements to an accountant in connection with audits, reviews, or examinations of Santa Fe's financial statements or in the preparation or filing of Santa Fe's documents or reports required to be filed with the SEC; or omitted to state, or caused another person to omit to state, material facts necessary in order to make statements made, in light of the

circumstances under which such statements were made, not misleading, to an accountant in connection with audits, reviews, or examinations of financial statements or in the preparation or filing of Santa Fe's documents or reports required to be filed with the SEC.

53. By reason of the foregoing, Mueller violated and unless restrained and enjoined will in the future violate Rule 13b2-2 of the Exchange Act.

## SEVENTH CLAIM FOR RELIEF

### False Certifications- Rule 13a-14 of the Exchange Act
### [17 C.F.R. § 240.13a-14]

54. Paragraphs 1 through 34 are hereby realleged and incorporated by reference.

55. Mueller signed a Sarbanes-Oxley Section 302 certification in connection with Santa Fe's Form 10-K for the year ended June 30, 2017, which stated that the signing officer has reviewed the report, and: (1) based on the officer's knowledge, the report does not contain any untrue statement of material fact; (2) based on the officer's knowledge, the financial statements fairly present, in all material respects, the financial results of operations; and (3) the signing officers are responsible for establishing and maintaining adequate internal controls over financial reporting, have designed and evaluated such controls, and have disclosed any changes or weaknesses to the registrant's auditor and audit committee. As alleged herein, Mueller signed a certification that he should have known was false.

56. By reason of the foregoing, Mueller violated and unless restrained and enjoined will in the future violate Rule 13a-14 of the Exchange Act.

## VIII. PRAYER FOR RELIEF

**WHEREFORE**, the SEC respectfully requests that the Court:

### I.

Find that Mueller committed the violations alleged in this Complaint;

**II.**

Enter an Injunction, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently restraining and enjoining Mueller from violating the laws and rules alleged against them in this Complaint;

**III.**

Order that Mueller pay civil money penalties under Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

**IV.**

Order that Mueller be prohibited from acting as an officer or director of any public company;

**VI.**

Order that Mueller be prohibited from engaging in any offering of a penny stock under Section 21(d)(6) of the Exchange Act [15 U.S.C. § 78u(d)(6)]; and

**VII.**

Grant such other relief as this Court may deem just or appropriate.

**JURY DEMAND**

Plaintiff demands a jury trial in this matter.

DATED: September 25, 2020.

Respectfully submitted,

s/ *Stephen C. McKenna*
Stephen C. McKenna
Attorney for Plaintiff
U.S. Securities and Exchange Commission
1961 Stout Street, Suite 1700
Denver, CO 80294-1961
(303) 844-1036
McKennaS@sec.gov